IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SILVERTHORNE SEISMIC, LLC<br>*Plaintiff*<br><br>V.<br><br>TIPTOP OIL AND GAS US, LLC<br>*Defendant* | §<br>§<br>§<br>§<br>§    CIVIL ACTION NO. _____<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff SILVERTHORNE SEISMIC, LLC ("SSLLC") files its Original Complaint against Defendant TIPTOP OIL AND GAS US, LLC ("Tiptop"). In support of this Complaint, SSLLC shows the Court as follows:

### I. PARTIES

1. Plaintiff SSLLC is a foreign corporation organized under the laws of the State of Delaware. Its principal place of business is Houston, Texas.

2. Defendant Tiptop is a foreign corporation organized under the laws of the State of Delaware and whose headquarters is located in Oklahoma City, Oklahoma. Tiptop may be served with process by serving its registered agent, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

1

## II. JURISDICTION

3.      The court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

## III. VENUE

4.      Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV. FACTS

5.      This lawsuit results from Tiptop's breach of two agreements with SSLLC—a Participation Agreement dated December 18, 2014 (the "Agreement") and a subsequent agreement settling SSLLC's claims under the Agreement in a Memorandum of Understanding dated July 1, 2016 (the "Memorandum"). True and correct copies of the Agreement and the Memorandum are attached hereto as Exhibits A and B, respectively.

6.      The Agreement involves Tiptop's licensing of 300 square miles of 3D seismic survey data within the Wakita 3D Seismic Survey (the "3D Survey Project") in Oklahoma.

7.      Under the terms of the Agreement, Tiptop was required to purchase from SSLLC a license for 300 square miles of data in the 3D Survey Project to be paid in two payments: $4,748,100 upon execution of the Agreement and $249,900 upon final delivery of all products.

8. The Agreement was executed by an authorized representative of Tiptop on or about December 30, 2014. SSLLC countersigned the contract as well. At Tiptop's request, SSLLC delivered to Tiptop invoices for both payments in December of 2014.

9. The first installment of payment was due and owing to SSLLC on the date the Agreement was executed by Tiptop on December 30, 2014. No payment was made at that time.

10. SSLLC requested a status on payment from Tiptop on January 3, 2015. Tiptop indicated at that time it was seeking the funding from its parent company. Weeks turned into months. Payment was not forthcoming. SSLLC made subsequent demands for payment. Tiptop gave SSLLC promises and assurances that payment would be made and acknowledged payment was past due. Tiptop continued to give SSLLC assurances payment would be made throughout 2015. Payment was never made.

11. Subsequently, SSLLC completed its work in producing the seismic survey. SSLLC advised Tiptop the survey was complete and available for delivery when Tiptop delivered payment of the sums owing under the Agreement. SSLLC sent additional copies of the invoices to Tiptop for the fees owed under the Agreement. SSLLC also delivered to Tiptop a supplement to the Master Licensing Agreement for the license for the data. Despite SSLLC's full performance under the Agreement and being ready, willing and able to fully perform including delivery of the data, Tiptop failed and refused to pay either the initial payment or the final payment.

12. SSLLC submitted its final demand for payment to Tiptop on June 8, 2016. A copy of the demand is attached as Exhibit C. After receiving the demand, Tiptop contacted SSLLC to request a meeting to discuss a resolution of its payment obligation

under the Agreement. SSLLC agreed to meet with Tiptop representative to discuss a potential resolution of the dispute. At the meeting, Tiptop professed to having no money to pay SSLLC under the Agreement. Instead it had an interest in other seismic data that it wanted to trade with SSLLC to resolve the breach of the Agreement. After lengthy settlement negotiations, Tiptop and SSLLC reached an agreement to resolve SSLLC's claims under the Agreement. The terms of settlement were memorialized in the Memorandum.

13. Under the terms of the Memorandum, Tiptop was required to convey, by assignment, to SSLLC all rights, title and interest it held in approximately 961 square miles of seismic surveys (the "Seismic Surveys"), identified on the map attached as Exhibit 1 to the Memorandum. Tiptop was to retain only a license to the 961 square miles of data.

14. Additionally, within fifteen (15) days of executing the Memorandum, Tiptop was to deliver to SSLLC, at no cost to SSLLC, the following deliverables: a. acquisition parameters, including pre and post plots for shotpoints and receivers; b. field data; c. shot appended gatherers; d. velocity field data; e. all processed data; f. all pertinent permit information including "no permit cut-outs" and copies of original permits; g. all observer notes; h. all further pertinent information as required by SSLLC related to the seismic surveys (the "Deliverables").

15. The Memorandum was executed by an authorized representative of Tiptop on July 1, 2016. SSLLC countersigned the contract as well.

16. Amazingly, Tiptop breached the Memorandum, which was intended to remedy prior breach of the Agreement, almost immediately. Tiptop failed to timely

4

produce documents reflecting and evidencing its ownership interest in the seismic data. In fact, the document Tiptop produced to SSLLC failed to establish Tiptop had 100% ownership in the seismic data or that it had the right to convey the data to SSLLC. Ultimately, SSLLC was able to obtain from Tiptop's partner evidence that Tiptop had the right to convey its interest in the data. However, Tiptop then failed to deliver the "deliverables" required in the Memorandum. Ultimately, and before Tiptop delivered all data required under the Memorandum, Tiptop committed a third breach of the Memorandum by refusing to assign the data to SSLLC. Instead, Tiptop insisted on retaining ownership of the data while conveying to SSLLC an ownership interest as well. SSLLC refused to modify the Memorandum accordingly.

17. All conditions precedent to SSLLC's right to payment from Tiptop under the Agreement and delivery of the survey data under the Memorandum have been waived or satisfied.

18. Tiptop owes SSLLC a minimum of Four Million, Nine Hundred Ninety-Eight Thousand Dollars ($4,998,000) under the Agreement. Plus, SSLLC has suffered other consequential damages due to Tiptop's failure to timely pay SSLLC in accordance with the Agreement. Specifically, SSLLC was required to use its own funds to obtain seismic survey data which should have been paid for with Tiptop funds, had Tiptop performed as required. Instead, SSLLC was unable to use its own funds for other projects and lost revenue from other projects it was compelled to forego. SSLLC estimates its consequential damages from Tiptop's breach of the Agreement exceed $5 million.

19. Alternatively, pursuant to the terms and conditions of the Memorandum, Tiptop owes SSLLC full ownership of the approximately 961 square miles of Seismic Surveys. Tiptop's breach of the Memorandum means SSLLC may demand specific performance of the Memorandum and delivery of ownership of the Seismic Surveys, or, at SSLLC's election, seek a dollar amount equal to the fair market value of the Seismic Surveys. SSLLC reasonably believes the value of these Surveys, which costs approximately $65,000,000 to acquire, exceeds $13,000,000.

## V. CAUSES OF ACTION

20. Plaintiff incorporates paragraphs 1-19 herein by reference.

**Breach of Contract (the Agreement)**

21. The Agreement between SSLLC and Tiptop expressly requires Tiptop to pay to SSLLC the total sum of $4,998,000 for 300 square miles of seismic survey data. SSLLC fully performed under the Agreement and made demand on Tiptop to pay all amounts owed under the Agreement. Despite acknowledging it owed the money to SSLLC, Tiptop failed and refused to make payment in accordance with its contractual obligations.

22. Tiptop breached the terms of the Agreement by failing to tender payment to SSLLC of the participation fee in accordance with the Agreement.  As a direct proximate result of the breach of the Agreement by Tiptop, SSLLC has been damaged in an amount of at least $4,998,000 representing the fees owed under the Agreement. Additionally, SSLLC has suffered consequential damages in excess of $5,000,000 as a direct and proximate result of the breach by Tiptop.

**Breach of Contract and Specific Performance (the Memorandum)**

23. Additionally, Tiptop breached the terms of the Memorandum which was intended to settle and resolve SSLLC's claims under the Agreement. Tiptop failed to assign all rights, title and interest it holds in the 961 square miles of Seismic Surveys and deliver the Deliverables to SSLLC. Further, Tiptop has demanded it retain ownership interests in the seismic survey data despite its binding agreement in the Memorandum to retain only a license for the data.

24. SSLLC has been damaged by Tiptop's breach of the Memorandum. Therefore, SSLLC seeks to recover from Tiptop an amount equal to the fair market value of the Seismic Surveys and Deliverables owed under the Memorandum. SSLLC reasonably believes it has been damaged in the amount of at least $13,000,000 from breach of the Memorandum. In the alternative, SSLLC seeks specific performance of Tiptop's obligations under the Memorandum plus damages for Tiptop's breach of the Memorandum and legal fees.

## VI.  ATTORNEYS' FEES

25. In accordance with the terms of the Agreement, as well as applicable statutory law, SSLLC is entitled to recover its reasonable and necessary attorneys' fees and costs incurred in enforcing the Agreement. Likewise, SSLLC is entitled to recover its reasonable and necessary attorneys' fees in enforcing the Memorandum. All conditions precedent to recovery of attorneys' fees have been satisfied or waived.

## VII.  PRAYER

FOR THESE REASONS, Plaintiff Silverthorne Seismic, LLC prays that Defendant Tiptop Oil and Gas US, LLC be cited to appear and answer herein and that,

on final trial, it has final judgment against Tiptop Oil and Gas US, LLC in the following respects:

a. Actual damages under the Participation Agreement in the amount of at least Ten Million Dollars ($10,000,000); or alternatively,

b. Actual damages under the Memorandum of Understanding in the amount of at least Ten Million Dollars ($13,000,000); plus,

c. Reasonable and necessary attorney's fees;

d. Prejudgment and post-judgment interest at the highest available rate under law;

e. All costs of court; and

f. All such further relief at law or equity to which Plaintiff may be justly entitled.

Respectfully submitted,

**IRELAN McDANIEL , P.L.L.C.**

*/s/   Bradford W. Irelan*
Bradford W. Irelan
Federal Bar No.:  13607
440 Louisiana, Suite 1800
Houston, Texas 77002
Telephone:   713-222-7666
Facsimile:    713-222-7669
birelan@IMTexasLaw.com

**COUNSEL FOR PLAINTIFF**